UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Scott Crow,                                                                    Civil No. 16-2831 (FLN)

        Plaintiff,

v.                                                                                     **ORDER**

Nancy A. Berryhill,
Acting Commissioner of Social Security,

        Defendant.

_____

Mac Schneider, for Plaintiff.
Linda Green, Assistant Regional Counsel, Social Security Administration, for Defendant.
_____

Plaintiff Scott Crow seeks judicial review of the final decision of the Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA"), who denied his application for disability insurance benefits under Title II of the Social Security Act. This Court has jurisdiction over Plaintiff's claim pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), 28 U.S.C. § 636(c), and Rule 73 of the Federal Rules of Civil Procedure. The parties have submitted cross motions for summary judgement. *See* ECF Nos. 12 and 14. For the reasons set forth below, the Commissioner's decision is **AFFIRMED** and the case is **DISMISSED WITH PREJUDICE**.

## I.  INTRODUCTION

Crow applied for disability insurance benefits ("DIB') under Title II of the Social Security Act on February 27, 2013. Administrative Record [hereinafter "AR"] 10, ECF No. 10. Crow alleges his disability began on July 19, 2010. AR 231–32. Crow's application was denied

initially on August 9, 2013, and on reconsideration on February 3, 2014. AR 122–27, 129–32. An administrative hearing was held before Administrative Law Judge ("ALJ") Hallie Larsen on October 30, 2014. AR 133–34. A supplemental hearing was held on February 9, 2015. AR 38–58. On March 30, 2015, the ALJ denied Crow's application for DIB and found that Crow was not disabled. AR 10–11. On June 24, 2016, the SSA Appeals Council denied Crow's request for review, rendering the ALJ's decision final for purposes of judicial review. AR 1–6; *see* 20 C.F.R. § 404.981. On August 22, 2016, Crow commenced this civil action, seeking an award of benefits, or alternatively, reversal and remand for further proceedings. ECF No. 1 at 2.

## II. FINDINGS OF FACTS

### A. Background

Crow was fifty years old when he filed his application for DIB. AR 231–32. Crow claims the following severe impairments prevent him from securing and maintaining competitive employment: history of cervical and lumbar strain; cognitive disorder; major depression; and post-traumatic stress disorder. AR 13, 231–37. Crow's past relevant work experience includes jobs as a semi-truck driver and milk-truck driver. AR 28, 398.

### B. Medical Opinion Evidence

On July 19, 2010, Crow was involved in a motor vehicle accident resulting in a closed head injury. AR 412–23, 924. Following the accident, Crow was admitted to CentraCare in St. Cloud, Minnesota, and image testing was performed. AR 414. The image testing failed to demonstrate any acute fractures. *Id.*

On August 23, 2010, Crow presented to Sanford Neurology for a consultation. AR 451. Crow presented with complaints of loss of consciousness and a head injury, consistent with post-concussive syndrome. *Id.* In September of 2010, Crow had a brain MRI performed. *Id.* The

results showed a venous angioma in the right frontal lobe. AR 414. In October of 2010, it was noted that he had a significantly depressed mood and flat affect with intermittent bouts of irritability. AR 460. Crow was noted to have full motor strength, intact coordination, normal gait, intact sensation, full orientation, intact memory, clear but reduced speech, intact knowledge, normal attention, intact comprehension, and significant psychomotor slowing. AR 451–58. Crow was diagnosed with post-concussive syndrome with possible post-traumatic stress disorder ("PTSD") or depression, and was advised he would benefit from a consultation with a psychiatric specialist regarding his ongoing mental-health challenges. AR 462.

### 1.     Psychiatric Treatment

Dr. Morris Hund first treated Crow at a psychiatric evaluation on December 17, 2010. AR 542–46, 924. Crow reported that since the accident, he had been very moody, depressed, had crying spells, would wake up irritable, had variable appetite, poor motivation, low energy, decreased concentration, and poor memory. AR 542. Dr. Hund noted that Crow had normal speech and thoughts, intact associations, no evidence of psychosis, fair insight, full orientation, intact remote memory, some difficulties with short-term memory, fair attention, intact knowledge, depressed mood and affect, and no thoughts of self-harm. AR 544. Crow was diagnosed with moderate major depressive disorder, probable PTSD, and a cognitive disorder not otherwise specified. AR 545.

In August of 2011, Crow underwent a psychological evaluation at Sanford Neurology with Dr. Jeffrey Leichter for determination of individual psychotherapy. AR 24–29. Crow was diagnosed with moderate major depression, a cognitive disorder otherwise not specified, and a rule out diagnosis of PTSD with a global assessment of functions ("GAF") score range of 55 to 60, suggesting moderate symptoms and limitations. AR 569.

Dr. Hund treated Crow regularly over the next four years. *See* AR 426–29; 542–54; 561–64; 571–73; 604–07; 615–18; 635–38; 647–54; 659–62; 671–74; 922–23. Crow was also seen regularly for psychiatric medication management. *See, e.g.*, AR 571, 586, 589. Over this time period, Crow experienced some improvement with functioning. AR 551. In December of 2011, Crow's GAF score was 68, suggesting mild to slight symptoms and limitations. AR 590. He was cooperative, engaging, had intact judgement and reasoning, and "a little sad" mood. *Id.* In January of 2012, Crow's GAF score was 70, suggesting mild to near slight symptoms and limitations, and he reported his mood was better and that he was staying busy cutting wood and getting outside more often. AR 596, 604.

In February of 2012, Crow's wife noted she felt he was doing better with an increased dose of Paxil, and Crow reported to have more motivation, better mood, was joking more, was less irritable, and sleeping better at night. AR 615. In March of 2012, Crow's wife reported his moods had been relatively stable and he was working at a family farm two to six hours a day. AR 621. Crow's interactions with his psychologist were also noted to improve and he had better eye contact. *Id.*

In April of 2012, Crow reported stable mood and his wife noted that he was markedly better than when he first started sessions. AR 625. Dr. Hund noted his progress was likely going to be slow and he might never return to his baseline functioning prior to the accident. AR 625.

On March 30, 2012, Crow underwent an Independent Medical Examination with Dr. Scott Yarosh. AR 1023–31. Dr. Yarosh indicated he took into account Crow's defense mechanisms, underlying personality features, and previous life experiences that contributed to Crow's personality development in order to determine what components of Crow's reaction to stress were related to a pre-existing predictable personality feature rather than the event itself.

AR 1031. Dr. Yarosh found Crow's lack of coping skills at the time of the accident explained the protracted recovery and the alleged ongoing impairments. AR 1029. He indicated Crow appeared to have a lack of motivation to return to work and an exaggeration of what he deemed to be impairing physical symptoms. AR 1031. He also stated there was no reason Crow was precluded from working with vocational rehabilitation and seeking employment as long as he was working with a therapist who emphasized Crow's strengths. AR 1030. In June of 2012, Crow was noted to have an improved mood, until he heard about being cut off from Worker's Compensation. AR 635.

On July 17, 2012, Crow underwent an independent medical examination with Dr. Paul Cedarberg. AR 1032–37. Dr. Cedarberg reviewed Crow's medical records and found that he had some degenerative changes at C5–6 with no evidence of acute changes. AR 1033. Crow complained of pain in his neck at any range of motion. AR 1034. Dr. Cedarburg found that there were no objective or diagnostic findings that could correlate to Crow's subjective symptoms and indicated Crow showed some signs of secondary gain with a lack of motivation to return to work. AR 1037. Crow was diagnosed with resolved cervical and lumbar strains. AR 1034–35.

In September of 2012, Crow reported his mood had been stable since his last visit. AR 657. Crow was noted to have a flat affect, occasionally joked, but was still having problems with irritability and frustration. *Id.* In December of 2012, Crow was noted to joke with his psychologist, reported an improved mood, and was able to track conversation. AR 669. Crow's wife reported that he was totally different from the first time he was seen, was doing much better, and had made progress. AR 671. Dr. Hund agreed, and indicated each time he examined Crow he felt he had made improvement. *Id.*

In May of 2013, Crow agreed to meet with a psychiatrist monthly. AR 685. In June of 2013, Crow claimed he had persistent pain and chronic fatigue, but had yet to follow up for a sleep study or see a new primary care doctor for his pain. AR 689. In July of 2013, Dr. Hund noted Crow's progress has been somewhat stabilized. AR 849. In August of 2013, Crow reported that he was performing work on the family farm, and would sometimes entertain friends. AR 858. In September of 2013, Crow reported having ongoing fatigue problems and was again advised to have a sleep study performed. AR 862. In October of 2013, Dr. Leichter noted that Crow's work on his family's farm was suitable for structuring his time and proved valuable to his purpose and feelings of competency. AR 873. In March of 2014, Crow returned to Dr. Hund and reported mood swings dependent on the level of stress he was having. AR 987.

In May of 2014, Crow was examined by Dr. Donald Pruessler. AR 990. Crow was noted to have intact attention, normal speech, intact language ability, no thought disturbances, intact associations, no evidence of psychosis, fair and inconsistent judgement and insight, impaired memory, impaired fund of knowledge, dysphoric mood, and constricted effect. AR 991. In July of 2014, Crow's wife reported he had been doing better, was spending more time outside, and was sleeping better, but still had variable irritability and low energy. AR 999.

In October of 2014, Crow saw Dr. Hund at the Fargo Veterans Administration. AR 963–65. Crow was alert and attentive, had cooperative behavior, down mood, and bland affect. AR 964. Crow continued to follow through with Dr. Hund through February of 2015. AR 1093–115. The most recent mental status examination observations indicate Crow had bland affect, normal speech, cooperative behavior, appropriate grooming, no evidence of psychosis, coherent thoughts, normal thought processes, fair insight, fair to good judgement, and intact memory. AR 1097.

## C. Administrative Hearing

An administrative hearing was held on October 30, 2014. AR 59. Attorney Scott Haider represented Crow, who testified on his own behalf. AR 10. Crow's wife and William Weiss, a vocational expert, also testified. AR 59. Dr. Robert Pelc testified by telephone. AR 10.

### 1. Crow's Testimony

Crow stated that he had not looked for work since July of 2010, and was unable to work due to a combination of pain and depression. AR 67, 69. He testified that he suffered from chronic neck and back pain. AR 69. Crow stated he had received injections in the past and was unsure if he was a surgical candidate. AR 69–70. He estimated that he could lift up to 25 pounds, stand for up to 45 minutes, and could walk without difficulty, so long as he went slowly. AR 70–71. When asked about his activities, Crow stated that he performed some household chores, did not cook or shop, shoveled snow, cut and stacked wood, gardened with his wife, cared for his dogs, performed basic home repairs, but no longer participated in hobbies. AR 72–73. Crow also performed some part-time work at his family's farm; watering and feeding calves and some light cleaning chores for about two hours a day. AR 67–68.

Crow stated that he had difficulty remembering things, had some problems getting along with others, and could become argumentative. AR 71. He also stated that he had staring spells where he would be unaware of what he was doing until he snapped out of it. AR 75. He claimed his wife had to constantly remind him to finish tasks. AR 76–77.

Crow's wife also testified at the hearing. AR 78. She indicated Crow required lots of reminders to stay on task and was argumentative when he was shown he was incorrectly performing a task. AR 78. She also indicated Crow had no concept of time, had poor judgement,

7

was not safe to operate farm machinery he had operated his whole life, tried making friends with a bull, and was regularly beset by mental impairments. AR 79.

### 2.     Vocational Expert's Testimony

The vocational expert ("VE") testified that Crow had past relevant work experience as a semi-truck driver and milk-truck driver. AR 83. Both of these jobs were identified as medium, semi-skilled work. AR 83. The ALJ posed the following hypothetical to the VE:

> assume an individual of claimant's younger age at alleged onset, and currently closely approaching advanced age, high school education, past work experience as you have previously described, who has the residual functional capacity to lift up to 50 pounds occasionally and 25 pounds frequently, no limitations on sitting, standing, walking throughout an eight-hour day with normal breaks. The individual can occasionally stoop, frequently climb ladders, ropes, scaffolds, stairs, ramps, kneel, crouch, and crawl. The individual should avoid all exposure to operation of a motor vehicle, and avoid concentrated exposure to work around hazards such as dangerous moving machinery and unprotected heights. The individual is limited to understanding, remembering, and carrying out short, simple instructions, and interacting appropriately with coworkers, and the general public on a brief and superficial basis. Could such an individual perform work such as claimant has done in the past?

AR 82–83. The VE opined that such a hypothetical person would be unable to perform any of Crow's past jobs because the mental demands of those jobs exceeded the limitations of the hypothetical. AR 83. However, the VE identified jobs of janitor, vehicle cleaner, and scarp sorter Crow could perform despite his limitations. AR 84. According to the VE, there are: 25,394 janitorial jobs; 7,430 vehicle cleaner jobs; and 2,600 scrap sorter jobs available in the national economy. AR 84.

The ALJ then posed a second hypothetical, and asked the VE to assume the claimant had:

> some residual functional capacity to lift up to ten pounds frequently, and 20 pounds occasionally, to sit and/or walk about six hours each in an eight-hour day with normal breaks. The individual should never climb ladders, ropes, or scaffolds, only occasionally climb stairs or ramps, balance, stoop, kneel, crouch, and crawl. The individual should avoid even moderate exposure to work around

>hazards such as dangerous moving machinery, or unprotected heights, and should avoid all exposure to operation of a motor vehicle. . . .

AR 85. The VE testified that this hypothetical individual could consider such positions as an assembler, a basket filler, or an agricultural sorter. *Id.*

### 3. Supplemental Hearing

A supplemental hearing was held on February 9, 2015 in Fargo, North Dakota. AR 38. Crow's attorney requested the hearing to address evidence not discussed in the first hearing that could not be submitted by briefs or interrogatories. AR 10. Crow and his wife provided additional testimony. AR 46–50; 50–53.

A Vocational Expert also testified. AR 53–57. The VE was asked the same hypothetical as the first hypothetical in the initial hearing. AR 54–55. The VE opined that such a hypothetical person could secure and maintain a job as a janitor, hand packager, or a dishwasher. AR 55. The ALJ found the supplemental hearing was essentially cumulative and covered much of the same ground covered in the first hearing. AR 11.

### 4. The Commissioner's Decision

On March 30, 2015, the ALJ issued a decision that Crow was not disabled and not entitled to DIB. AR 11. In determining that Crow was not disabled, the ALJ followed the five-step sequential process established by the SSA. *See* 20 C.F.R. § 404.1520(a)(4).

The first step in the sequential evaluation is to evaluate the claimant's work history to determine if they are engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.15071 and 416.971. If the claimant has performed substantial work activity then he is not disabled. *Id.* At step one, the ALJ found that Crow had not engaged in substantial work activity since his alleged disability onset. AR 13.

The second step in the sequential evaluation is to determine whether the claimant has a severe, medically-determinable impairment, or combination of impairments, that significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c). At step two, the ALJ found that Crow had the following severe impairments: history of cervical and lumbar strain; cognitive disorder; major depression; and post-traumatic stress disorder. AR 13.

The third step in the sequential evaluation requires the ALJ to determine whether the claimant has an impairment that meets or equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d), 404.1525, 404.1526. Here, the ALJ determined Crow does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix 1. AR 13.

If the claimant's impairment does not meet or equal one of the listings in Appendix 1, then the ALJ must make an assessment of the claimant's Residual Function Capacity ("RFC"). *See* 20 C.F.R. § 416.920(e).

The ALJ concluded that Crow had the RFC to:

perform less than the full range of medium work as defined in 20 C.F.R. 404.1567(c) except: the claimant is limited to lifting and carrying 50 pounds occasionally and 25 pounds frequently. The claimant has no limitations with sitting, standing or walking with normal work breaks. The claimant is limited to occasional stooping. The claimant is limited to frequent balancing, kneeling, crouching, crawling, and climbing of ladders, ropes, scaffolds, ramps or stairs. The claimant is limited to never operating a motor vehicle. Mentally, the claimant is limited to understanding, remembering, and carrying out short, simple instructions. The claimant is limited to interacting appropriately with coworkers and the general public on an occasional basis.

AR 15. In making this determination, the ALJ found that Crow's medically determinable impairments could reasonably be expected to cause the alleged symptoms, "however, the

claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible . . . ." AR 16.

In the fourth and fifth steps of the sequential evaluation process, the ALJ must determine whether the claimant has the RFC to perform either his past relevant work or any other jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv)–(v). If the claimant cannot perform his past relevant work, then the burden shifts to the Commissioner to establish, first, that the claimant has the RFC to perform other kinds of work, and, second, that other work exists in substantial numbers in the national economy. *See Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

At step four, the ALJ found that Crow was not able to perform any past relevant work. AR 28. This finding was based on the VE's testimony that a hypothetical person with the same limitations, age, education, and past work experience could not perform any of Crow's past relevant jobs because the mental demands of those jobs exceeded Crow's RFC. AR 28. At step five, the ALJ concluded that considering Crow's age, education, work experience, and RFC, that jobs exist in significant numbers in the national economy that Crow can perform. *Id.* This determination was based on the VE's testimony, which the ALJ found consistent with the information contained in the Dictionary of Occupational Titles. AR 29.

### III.  STANDARD OF REVIEW

Congress has prescribed the standards by which Social Security disability benefits may be awarded. "Disability" under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An

individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *see also Quals v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence means more than a mere scintilla; it means sufficient relevant evidence that a reasonable person might accept as adequate to support a conclusion. *See Richard v. Perales*, 402 U.S. 389, 401 (1971). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision. *See Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468 (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). Therefore, this Court's review of the ALJ's factual determinations is deferential, and does not re-weigh the evidence nor review the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th. Cir. 1997); *see*

*also Roe v. Chater*, 92 F.3d 672, 675 (8th. Cir. 1996). The Court must "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

## IV.  ANALYSIS

Crow argues that the ALJ failed to: (1) properly assess and weigh his primary treating doctor and the medical expert's opinion; (2) erred by failing to follow SSR 06-03p by not discussing his workers' compensation award; (3) procedurally erred; (4) posed improper hypothetical questions to the VE at both administrative hearings; and (5) erred in assessing his credibility. *See* ECF No. 13 at 4–5. Because substantial evidence supports the ALJ's decision to deny Crow's application for DIB, the Court disagrees.

### A.  The ALJ Properly Weighed the Evidence

#### 1.  Substantial evidence supports the weight assigned to Dr. Hund's opinion.

Generally, a "treating physician's opinion is entitled to controlling weight," so long as it is "supported by medically acceptable techniques and is not inconsistent with substantial evidence in the record." *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016). The ALJ must "always give good reasons . . . for the weight [attributed to the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). When deciding the weight to give an opinion, the ALJ considers factors including: (1) the examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. *See* 20 C.F.R. § 416.927(c).

The ALJ rejected Dr. Hund's assessment of Crow and gave his opinion "little weight." AR 25. Crow argues the ALJ erred to properly evaluate the medical evidence by failing to properly weigh Dr. Hund's opinion as Crow's primary treating doctor. *See* ECF No. 13 at 5.

Dr. Hund wrote a letter dated September 3, 2012, summarizing Crow's treatment history and stated that Crow was not employable for the foreseeable future due to medical challenges. AR 924–26. Dr. Hund concluded in a second letter dated November 12, 2014, that Crow had not reached maximum medical improvement and was suffering from ongoing symptoms. AR 20–21. The ALJ opined that the letters were "vague and [do] not contain any vocationally relevant limitations." AR 25. The ALJ noted Dr. Hund's findings are "inconsistent with the claimant's . . . work activity that he was performing as a farm hand at his in-laws farm." AR 25; *see also* AR 722.

Substantial evidence supports the ALJ's conclusion that Dr. Hund's opinion was inconsistent with the record as a whole. *See Julin*, 826 F.3d at 1088. For example, various treatment notes indicate Dr. Hund found that Crow was not employable due to his "ongoing problems with depressive, anxiety and ongoing cognitive dysfunction symptoms that included short-term memory difficulties and slow processing." AR 926. This is inconsistent with Dr. Hund awareness that Crow was performing extensive farm labor. Indeed, Dr. Hund's March 2012 treatment notes state that Crow was working on his family's farm up to six hours per day, AR 754, and in August of 2012, Crow reported he was working up to eight hours a day, seven days a week on the farm. AR 722. Moreover, the ALJ noted that the treatment notes indicated that Crow and his wife planned on taking over the farm until his wife became ill with cancer.

In addition, the ALJ properly rejected Dr. Hund's assessment that Crow met paragraph B, as well as paragraph C, Listing 12.02 and 12.04 criteria as those findings were "disproportionate to the conservative treatment provided and the lack of any inpatient psychiatric hospitalizations." AR 25; 924–26. In February of 2012, Crow's wife reported that he was in a better mood, was joking some, was less irritable, and Dr. Hund described Crow as cooperative. AR 615. In March

of 2012, Crow's wife reported his moods had been relatively stable, and his interactions with his psychologist were noted to have improved, and he had better eye contact. AR 621. The Court concludes Dr. Hund's opinion as a treating physician is not entitled to controlling weight because substantial evidence in the record contradicts his opinion that Crow met the "paragraph B" and "paragraph C" Listing 12.02 and 12.04 criteria for disability. *See Julin*, 826 F.3d at 1088.

### 2. Substantial evidence supports the weight assigned to Dr. Pelc's opinion.

"[T]he opinions of nonexamining medical sources are generally given less weight than those of examining sources." *Papesh v. Colvin*, 786 F.3d 1126, 1133 (8th. Cir. 2015). However, an ALJ can award a state agency consultant's opinion more weight if that opinion is supported by evidence in the record. *See Davis v. Apfel*, 239 F.3d 962, 967–68 (8th 2001). While the opinion of a non-examining physician does not constitute substantial evidence independently, an ALJ may permissibly consider such an opinion as one aspect of a broader record. *See Johnson v. Astrue*, No. 10-cv-4373(DWF/JJG), 2012 WL 1004992, at *8 (D. Minn. Mar. 26, 2012). If an ALJ concludes that a treating physician's opinion is not entitled to controlling weight, the ALJ "must explain in the decision the weight given to the opinions of a state agency medical . . . consultant." 20 C.F.R. §§ 404.1527(e)(2)(ii); *see also* 416.927(e)(2)(ii).

Here, the ALJ articulated specific reasons for the weight assigned to Dr. Pelc's opinion that Crow failed to meet Listing 12.02 and 12.04. Specifically, the ALJ noted that Dr. Pelc "cited specific supporting objective evidence to support his conclusions as well as other inconsistencies in the record that undermined the treating sources statements." AR 26. The ALJ also found that Dr. Pelc provided a rational basis for his conclusions that were generally consistent with the "longitudinal medical evidence" taken with the medical record as a whole. *Id.*

The ALJ points to the objective testing Dr. Pelc finds persuasive, specifically Crow's GAF score. AR 26. Here, the Court's review of the ALJ's factual determinations is deferential and it neither re-weighs the evidence, reviews the factual record *de novo*, nor reverses when an ALJ's decision falls within a reasonable "zone of choice." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th. Cir. 2006). The ALJ properly accounted for Dr. Pelc's opinions, incorporated his findings, and found them to be consistent with the objective medical record. Ultimately, substantial evidence supports the ALJ's determination that Crow did not meet Listing 12.02 and 12.04. *See Shontos v. Barnhart*, 328 F.3d 418, 424 (8th Cir. 2003).

**B.    The ALJ did not Err by Not Acknowledging Crow's Workers Compensation Award.**

An ALJ is required to "evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies." SSR 06-03p, 2006 WL 2329939.[1] Here, Crow's Workers Compensation award was not a decision or finding by a governmental or non-governmental agency, but rather a private agreement between Crow and his employer. AR 258–72. The Workers Compensation did not need to be reviewed as it was not from an "acceptable medical source" or another "non-medical source." SSR 06-03p.

However, the ALJ satisfied SSR 06-03p insofar as he evaluated and weighed the opinions of the two Workers Compensation physicians who examined Crow, Dr. Cedarberg and Dr. Yarosh. AR 24. The ALJ noted Dr. Cedarberg's finding that Crow had "residual symptoms from the motor vehicle accident that could reasonably limit Crow to a range of medium work activity." *Id.* The Commissioner also gave some weight to Dr. Yarosh's opinion that Crow was unable to perform his past work as a truck driver secondary to PTSD symptoms, but that Crow

---

1    SSR 06-03p was rescinded effective March 27, 2017, but remains germane to this dispute given that Crow commenced this action on August 22, 2016.

could return to other work as he had performed farm hand work on his family farm on a rather consistent basis. AR 24–25. Here, the ALJ correctly evaluated and weighed these opinions. *See* SSR 06-03p, 2006 WL 2329939. The authority to determine disability under the Social Security Act resides with the Commissioner, s*ee* 20 C.F.R. § 404.1527(e). Although an entitlement to benefits under another workers assistance program may bear on a claimant's application for SSA DIB, that entitlement does not control the ALJ's determination.

## C.   The ALJ Properly Developed the Record.

Crow asserts that the ALJ did not follow the Hearings, Appeals, and Litigation Law Manuel (HALLEX) I-2-5-42(C)(1), which states that interrogatories to a medical expert will contain a transcript or summary of the hearing testimony. *See* ECF No. 13 at 20. Crow offered no binding precedent that the failure to follow HALLEX is a reversible error; i.e., an error that would impact the determination on Crow's ability to work. *See Cox v. Apfel*, 160 F.3d 1203, 1209–10 (8th Cir.1998).

Crow also argues that the ALJ erred in not granting his request for a prehearing conference. In support, Crow cites 20 C.F.R. § 404.961, which provides that an ALJ "may decide on his or her own, or at the request of any party, to hold a prehearing or post hearing conference to facilitate the hearing or the hearing decision." Here, the ALJ granted a supplementary hearing, which it found was essentially cumulative. AR 10–11. Again, the Court cannot impute reversible error to the ALJ's decision to hold a supplementary hearing, rather than a prehearing conference, given that that the regulation Crow cites imposes no mandatory duty on an ALJ. The ALJ provided Crow with the process he was entitled to under the Social Security Act.

Crow also argues that the ALJ posed an improper hypothetical to the VE. *See* ECF No. 13 at 26. Crow argues that if the ALJ had properly included all of his limitations, the ALJ would

have made a different finding at step five. *See* ECF No. 13 at 26. The Court finds the hypothetical was based on substantial evidence in the record after the ALJ reviewed and weighed the medical evidence regarding Crow's limitations in concentration, persistence, and pace, incorporating Crow's testimony. Again, the Court's review of the ALJ's factual determinations is deferential and it neither re-weighs the evidence, reviews the factual record *de novo*, nor reverses when an ALJ's decision falls within a reasonable "zone of choice." *Hacker*, 459 F.3d at 936.

### D.    The ALJ Properly Weighed Crow's Credibility

The ALJ's function is to weigh conflicting evidence. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). Contrary medical evidence reduces a claimant's credibility. *Cypress v. Colvin*, 807 F.3d 948, 951 (8th Cir. 2015). Here, the ALJ correctly assessed Crow's credibility as he made no effort to seek vocational or rehabilitative counseling, even though his doctors suggested it, and he was working on his family farm while maintaining that he did not have the capacity to work. *Compare* AR 69, *with* AR 722. The ALJ properly weighed the conflicting evidence and found Crow's testimony not credible. *See Kirby*, 500 F.3d at 709.

### V.    CONCLUSION AND ORDER

If the ALJ's decision is supported by substantial evidence in the record, this Court cannot reverse simply because "substantial evidence . . . would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468 (citing *Craig*, 212 F.3d at 436). Here, substantial evidence supports the ALJ's findings and ultimate determination that Crow is not disabled.

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Plaintiff's motion for summary judgement (ECF No. 12) is **DENIED**;

    2.      Defendant's motion for summary judgement (ECF No. 14) is **GRANTED**;

    3.      The Commissioner's decision is **AFFIRMED** and the case is **DISMISSED WITH PREJUDICE.**

**LET JUDGEMENT BE ENTERED ACCORDINGLY**.

DATED: March 22, 2018                                      <u>*s/Franklin L. Noel*</u>
                                                                       FRANKLIN L. NOEL
                                                                       United States Magistrate Judge